State vs. McCoy.

## No. 700.

### THE STATE vs. JOHN B. McCOY.

The law which directs a change of venue on the naked application of the district attorney is constitutional.

The verbal reservation of a right to file exceptions, made by an attorney, in a case before a district court, is of no effect.

The accused in one case can not avail of an exception to the venire filed by the accused in another case.

When he is neither "personally interested" in the case, nor connected by blood or marriage with a prisoner arraigned before him, the judge must, on being *recused*, appoint a lawyer of proper qualifications to sit in his stead.

The affidavit of an accused that an absent witness would prove that his life was threatened by the deceased, and that he killed deceased in self-defense, is not ground for a continuance.

Threats of deceased against the accused, are not admissible in evidence, until it be first proved that the accused had been advised of them.

APPEAL from the Ninth Judicial District Court, parish of Rapides. *Bowman*, Judge *ad hoc*. Trial by jury.

*Edwin G. Hunter*, District Attorney, for the State.

*M. Ryan, H. L. Daigre*, and *A. Cazabat*, for defendant and appellant.

The opinion of the court was delivered by

SPENCER, J. Defendant was indicted in the parish of Grant for murder. On motion and affidavit of the district attorney a change of venue was ordered to Rapides parish, where the accused was tried and convicted of murder, without capital punishment, and accordingly sentenced to hard labor for life. He prosecutes this appeal, and presents by bills of exception for our decision various grounds for the reversal of the sentence:

First—That the court erred in granting the change of venue upon the simple application of the district attorney, without proof.

The act of 1868 does not require proof where the district attorney applies for the change, but makes it obligatory on the judge to grant it. In this case the district attorney swore to the facts stated by him, and to the necessity of the change. The change of venue was ordered in January, 1876, and no subsequent legislation should be construed as vacating that decree. This act of 1868 is not in conflict with the constitution, so far as we can see. Article six guarantees a trial by a jury of the parish, "unless the venue be changed." The Legislature was and is free to declare when and how the venue may be changed. This is what it did by said act.

Second—H. L. Daigre, one of defendant's counsel, on the first day of the term offered to file on behalf of one White and one Jones (who stood indicted before the court) a motion to set aside the venire, which the judge refused to permit him to do, because he had not paid his license. Thereupon he excepted. On trial of this case against McCoy said attorney

38

offered to file therein his said bill of exceptions taken in the cases and on behalf of White and Jones, stating that he had verbally reserved the right to file said bill in all cases in which he was counsel.

The court did not err in refusing this application. The district court is a court of record, and verbal reservations of the sort referred to can not be noticed. Defendant McCoy has no right to complain of the court's rulings in the cases of White and Jones, with which he had no connection. If he thought the venire illegal, he should on the first day of the term have filed or offered to file his motion to quash it. He did not do so.

Third—That the court erred in calling R. J. Bowman, an attorney at law, to preside in the trial of this case. The facts are that after the indictment of McCoy his attorney, W. F. Blackman, was elected judge of the ninth district. Judge Blackman entered an order in this case recusing himself on the ground that he had been of counsel for defendant, and appointed Bowman, an attorney of his court, to try the case. Defendant excepted to Bowman's appointment, and contends that, under article ninety of the constitution, an attorney can not be appointed to preside in the trial of a criminal case. That article reads as follows :

"In *any case* where the judge may be recused, and where he is NOT PERSONALLY interested in the matters in contestation, he shall select a lawyer having the qualifications required for a judge of his court to try such cases. And when the judge IS PERSONALLY interested in the suit, he shall call upon the parish or district judge, as the case may be, to try the case."

It would be difficult to frame a law in more general terms than this : "*In any case* where the judge may be recused, and where he is not personally interested in the matters in contestation, he shall select a lawyer," etc. "When the judge is personally interested in *the suit* he shall call upon the parish judge," etc. The provisions of section 1068 of Revised Statutes apply only where the judge "is connected by blood or marriage with the prisoner." So that the interpretation of article ninety of the constitution contended for by defendant would leave the case, where the recused judge was not personally interested, and not related by blood or marriage, totally unprovided for. We can not adopt such a view. We think the appointment of an attorney to preside is clearly legal. *If* the law requires the attorney so appointed to take an oath as judge *ad hoc*, we must presume that it *was* done. The point is only raised in the brief of counsel. The record does not show that an oath was not taken. *Omnia presumuntur rite acta.*

Fourth—The accused made affidavit for continuance on account of the absence of certain witnesses, and stated therein what he expected to prove by them. Among other things stated as provable by said wit-

State vs. McCoy.

nesses was that "said Radeski (the deceased) by his threats and conduct against affiant rendered the danger to his (affiant's) life actual and imminent, and that the killing o f Radeski was unavoidable and necessary to preserve his own life, and the killing done in self-defense."

The court ordered this part of the affidavit to be stricken out, and thereupon the State admitted the truth of all the other allegations of the affidavit, and the court then overruled the application for continuance, and the trial proceeded. Defendant excepted. We think the reasons assigned by the judge *ad hoc* sufficient. He says: "The question whether the threats and conduct of the deceased rendered the danger to the life of the prisoner imminent is a question which must be determined by the jury from the words and actions of the deceased constituting those threats and that conduct, and not from the assertions of the witnesses; that the threats and conduct did render the danger imminent is a legal question growing out of certain facts, and not a fact itself. The question whether the killing of Radeski was unavoidable, and necessary to preserve the prisoner's life and done in self-defense is the very issue submitted to the jury; a legal question to be determined by them and not by witnesses under the semblance of giving testimony, and that the State could not be required to admit legal questions as evidence."

Fifth—The counsel for prisoner asked a witness: "Did you hear the deceased, Radeski, make, on the day of the killing, any threats against the life of the accused?" Objection being made by the State, the court offered to permit the prisoner to ask witness if he had ever communicated to him, the prisoner, any threats made by the deceased;" and if the witness answered affirmatively, then to allow the question propounded to be put. The prisoner refused to put the preliminary question proposed by the court, and then the court sustained the objection, and prisoner excepted.

"It is well settled that antecedent threats by the deceased against the accused are not admissible in evidence, unless it appears that they were communicated to the accused. Their admissibilty depends upon this as a condition precedent; and as their admission would be illegal without this necessary concomitant proof of communication, we think that the court may well refuse to admit them until this necessary foundation is laid, just as courts refuse to admit the testimony of deceased or absent witnesses until the death or absence is proved." State vs. Gregor, 21 An. 473.

Sixth—The prisoner also excepted to the charge of the judge, which was as follows:

"If you are conscious that you know what the law is upon any point that may arise in your deliberations, it is your right and your duty to follow your own constructions, even though they may differ from the

legal opinion of the court upon that point, but if you feel conscious that you are ignorant of what the law is upon the point in question, it is your duty to follow the law as stated by the court, and to ask its instructions upon points of which you are ignorant. The law never intended in making juries judges of the law that they should substitute ignorance for knowledge, nor for juries to decide that to be law which they in their conscience feel that they know nothing about. Although you are not lawyers, the law presumes that you have learned the law of this case from the law which has been expounded to you on the trial. But knowledge is something tangible and definite, and you must be conscious that as such you possess it whenever you differ from the court upon a point of law."

The objection to this charge can not be that it is too restrictive of the power of juries. While fully, and perhaps too fully, conceding the jury its powers as judges of the law and fact, it wisely and properly cautions them against substituting their ignorant fancies and personal wishes for conscious knowledge and application of legal principles as bases of decision.

Seventh—In *the brief* of counsel for accused, it is stated that it is assigned as error on the face of the record that the accused was not arraigned as required by law. We find no assignment of errors filed in the record, and even if the statement in the brief sufficed, the counsel has not advised us wherein the defect of arraignment consists; and an inspection of the transcript has failed to reveal it to us. We conclude, therefore, that there is no error in the verdict and sentence appealed from; and

It is therefore ordered and decreed that the same be affirmed with costs.

----

### CONCURRING OPINIONS.

DeBlanc, J. In this case the district attorney applied for a change of venue, on the ground that the State could not obtain a fair and impartial trial in the parish of Grant, because of the prisoner's popularity among some of the population and their almost universal determination and *assertions* that they would acquit him.

The State officer swore to the truth of these facts, and his declaration stands uncontradicted.

For that reason I am of the opinion that the change of venue was properly allowed, but I do not believe that, on the naked application of either the Attorney General or a district attorney, the judge is authorized to change the venue to another parish without proof that a competent

State vs. McCoy.

jury of the parish, wherever the offense is charged to have been committed, can not be had.

The constitutional rule is that "the accused shall be entitled to a speedy public trial by an impartial jury of the parish in which the offense was committed." The change of venue is the exception to that rule.

Unless it is alleged and established that an impartial jury of the parish can not be had, a change of venue, against the will of the accused, is a dangerous violation of the constitution, as, otherwise, that constitutional privilege of a prisoner, his life, his liberty, and reputation would be at the mercy of the district attorney or Attorney General.

.I concur in the decision read by Mr. Justice Spencer, and reserve the right of hereafter filing a separate opinion on the question above alluded to.

EGAN, J. I concur in the views expressed in the foregoing concurring opinion of Mr. Justice DeBlanc. The uncontradicted affidavit of the district attorney in the matter of change of venue, though unusual, sets forth a very sufficient state of facts in the present case to warrant the order made.